(Allen County. Ohio, Common Pleas Court.)
Oct. Term, 1897.

GUS KALB, ASSIGNEE OF ED. WISE, AN INSOLVENT v. ED. WISE, et al.

———

1. The duty imposed upon the county recorder by statute, to enter upon each written instrument presented for record ''the date and precise time of day of its presentation'' is a ministerial duty, and is not conclusive, but is only presumptive evidence of the fact stated thereon, and the true date of such presentation for record may be shown by oral testimony notwithstanding such record.

2. From an examination of the statutes relating to filing of written instruments with the county recorder and requiring the recorder to make a correct record of such instruments in his office, it is clear that the legislature intended to provide a record of the title to the real estate situate within each county, which should be notice of the true state of the title to each tract of land within the county.

3. The language ''delivered to the recorder of the proper county for record,'' as used in section 4133 R. S., and ''presentation of a deed or other instrument in writing for record,'' as used in section 4134 R. S., are to be construed as requiring such delivery or presentation to be at the office of the county recorder, and that the same be filed therein, so that an examination of the files and records in the recorder's office will disclose the fact of such filing.

4. The delivery of a mortgage by the mortgagee to the county recorder, at a place other than in the office of such recorder, and the indorsement thereon by the recorder of the time he received the same, creates no lien upon the real estate described therein as against those who acquire rights to, interests in or liens upon such real estate

before the mortgage is actually placed on file in the office of the recorder.

5. Two mortgages were handed to.an employe of the recorder and by such person indorsed "filed for record February 6th, 1896, at 7:15 P. M., and 7:35 P. M." respectively, but were not actually placed in the office of the recorder until after nine o'clock P. M. of said day; and a deed of assignment executed by the mortgagor was filed in the probate court of the same county on the same day at 7:45 P. M., Held, that such mortgages were not filed "for record" within the meaning of sec. 4133 R. S. until actually placed on file in the recorder's office, and secured to such mortgagees no preference over the general creditors of the insolvent.

---

RICHIE, J.

The plaintiff, Gus Kalb, as assignee of Ed. Wise, insolvent, filed his petition in the probate court of Allen county, Ohio, asking for an order to sell the real estate of the insolvent, and made parties defendant all who claimed to hold liens upon such real estate.

Meyer Kuhn filed his cross-petition setting up a mortgage executed to him by the insolvent which was left with the recorder of Allen county for record on the 6th day of February, 1896, at seven o'clock and fifteen minutes P. M., purporting to secure notes amounting to more than one thousand dollars.

Abraham and Julius Wise filed their cross petition setting up a mortgage executed by the insolvent to them, which was left with the recorder of Allen county for record February 6th, 1896, at seven o'clock and thirty-five minutes P. M., purporting to secure a claim of some three thousand dollars.

The records of the probate court show that the deed of assignment, executed by said insolvent, was filed in the probate court, on the 6th day of February, 1896 at seven o'clock and forty-five minutes P. M.

A number of the general creditors of said insolvent filed answers to the cross-petitions of Meyer Kuhn and of Abraham and Julius Wise, in which they deny that said mortgages had been filed for record with the recorder of Allen county at the times averred in said cross-petitions, and aver that said mortgages were not filed for record with the said recorder until after eight o'clock P. M. of said 6th day of February, 1896, and after the filing of said deed of assignment in the probate court of said county.

A hearing was had in said probate county, upon agreement as to facts. The probate court found against said mortgagees, who appealed said cause to the court of common pleas of said county. Said mortgagees refused to submit the cause to this court upon said statement of facts, and it was heard and submitted upon the testimony. The mortgagees offered in evidence the origidal mortgages, and also certified copies of the rec-

ord of each of said mortgages, by which it appeared that the recorder had endorsed upon the mortgage to Meyer Kuhn, "Filed for record, February 6th, 1896, at seven o'clock and fifteen minutes P. M." And upon the mortgage to Abraham and Julius Wise, "Filed for record February 6th, 1896, at seven o'clock and thirty-five minutes P. M."

The general creditors offered testimony tending to show that said mortgages were not filed in the office of the recorder of Allen county, Ohio, before said deed of assignment was filed in said probate court of said county, and that they were not handed to said recorder for record until some time after said deed of assignment was filed; to which testimony the mortgagees objected, for the reason that oral testimony was inadmissible to vary or contradict the indorsements placed upon the mortgages by the recorder. The court overruled the objection, and permitted testimony to be introduced tending to show all the detail of the tranaction.

The fact as shown by the testimony so admitted are: that on February 6th, 1896, the recorder of Allen county had two assistants in his office, his wife and son, neither of whom had been appointed and qualified as a deputy as required by sec. 1141 R. S. That at seven o'clock P. M., of February 6th, 1896, the custodian of the mortgages, who held the same for the purpose of having them filed for record, and who also held the deed of assignment for the purpose of filing the same, went to the office of the recorder and found it closed. He then went to the residence of the recorder, and finding him absent, handed the mortgages to the wife of the recorder, who wrote the indorsements thereon as to time of filing. Said mortgages remained in the custody of the recorder's wife until her husband returned home some time after nine o'clock P. M. of same day, when she delivered the mortgages to him. After the recorder received the mortgages from his wife, he went to his office and left the mortgages there, but did not change the file marking placed thereon by his wife. The deed of assignment was filed in the probate court, as shown by the testimony, at the time it bears file mark, February 6th, 1896, at seven o'clock and forty-five minutes P. M.

A motion was made by the defendants to rule out all the testimony so admitted over their objection tending to impeach, vary, explain, or, contradict the endorsements which appear upon each of said mortgages.

If such testimony should be excluded, there remains no question for the court to determine, for the deed of assignment having been filed at seven forty-five P. M. on February 6th, 1896, and if the endorsements on the mortgages impart absolute verity, and are conclusive as to the time of filing, and the date of filing stated thereon being prior to the actual filing of the deed of assignment—the statute fixing the time when a mortgage shall take effect,, R. S.,

4133—determines the fact of the priority of he liens of the mortgages.

But is the indorsement placed on the mortgages conclusive proof of the time when they were legally filed for record? Section 1144 R. S., provides, that "upon the presentation of a deed or other instrument of writing for record, the recorder shall indorse thereon the date and the precise time of day of its presentation—." So that the act of entering upon the mortgages the time they were presented for record, was not a matter of convenience merely, but was the performance of a statutory duty; and the presence of the indorsements upon the mortgages is presumptive evidence that the time thereon stated is the precise date at which they were presented for record.

In Tracy v. Jenks, 15 Pick. 465, the court says: "The original certificate of the register of deeds as to the time when a mortgage deed was received for record, is conclusive as between the mortgagee and a creditor who has attached the mortgaged land subsequently to the time stated in such certificate' The same verity was held as to the certificate of a town clerk as to the time of filing a mortgage of personal property, in Ames v. Phelps, 18 Pickering 314. In Fuller v. Cunningham, 105 Mass. 442, the court held that the certificate of the clerk as to time of service was conclusive. And in Adams v. Pratt, 109 Mass. 59, it was held that the certificate of the recording officer could not be contradicted by the record of the instrument.

The same rule appears to obtain in Maine. Hatch v. Hoskins, 17 Me. 391. Also in Alabama as held in Bubose v. Yonng, 10 Ala. 365, and Parsons v. Boyd 20 Ala. 112.

In Virginia it was held in the case of Horsey v. Grath, 2 Gratt. 471, that the true date of filing of a deed might be shown by parol as against the date entered upon the instrument by the recording officer.

In Wing v. Hall, 47 Vt. 182, the court held that in the absence of proof to show a different date, the presumption is that the true date was entered upon the instrument; but the true date could be shown by testimony dehors the record. The same rule seems to obtain in New York, Illinois and a number of other states.

I have not access to the statutes of Massachusetts, and am unable to determine what verity is given by statute to the certificate of a recording officer; and as all the Massachusetts decisions refer to the "certificate" of such officer, it may be doubted whether the decisions of that state are applicable to the case at bar.

In view of the apparent conflict of authorities of other states, this question must be determined from the statutes of our own state, aided by such analogies as may be drawn from the decisions of our own courts where similar duties are imposed upon other officers by statute.

The duty imposed upon the recorder by sec. 1144 R. S., is a ministerial duty only; and if such ministerial act of a recorder is more conclusive than the ministerial acts of other officers charged with the performance of ministerial duties, such verity must be conferred by legislative enactment. Section 4143 R. S. provides when and where a certified copy of a deed or other instrument recorded in the recorder's office shall be received in evidence, and declares the degree of weight to be given to such certified copy. The language of section 4143 is as follows: "A copy of the record of a deed or other instrument of writing, duly certified by the county recorder with his official seal affixed thereto, shall be received in all courts and places within this state, as prima facie evidence of the existence of such instrument, and as conclusive evidence of the existence of such record." It is only conclusive as to the fact of such record, and not the correctness of that which is recorded. The legislature could not have intended that the record should have such binding force that a mistake of the recorder should supplant the intsrument recorded, or in any way change its terms or destroy its potency. It will be observed that the language used in sec. 4143 is so guarded as not to give opportunity to extend its meaning. The certified copy shall be "conclusive evidence of th existence of such record"—not of the truth of the matter recorded—but only of the fact that such record exists. By sec. 1145 R S., it is made the duty of the recorder to "record the date and precise time of day when same was presented for record." So that the certificate is conclusive evidence of that fact, but is not conclusive as to the correctness of the date so recorded. It is only prima facie evidence of that fact as it is prima facie evidence of the correctness of any other fact shown by the record.

The statute does not make the certificate conclusive as to the time it was presented for record; and having designated the particular in which it shall be conclusive, furnishes a declaration of the legislative intent that it shall not be conclusive in any other respect. "Expressio unius, est exclusio alterius."

The duty enjoined by statute upon a recorder to indorse upon written indorsements presented to him for record, is not a higher duty than that imposed upon the clerks of courts, and upon the probate judge and his deputy clerk in filing papers in their respective courts. The court, in Haines v. Lindsey, 4 Ohio at page 90, held, that the clerk performs a ministerial duty in the filing of papers in his office. The court in Nimmons v. Westfall, 33 Ohio St., 213, held that the indorsement on a paper filed in the district court, of the time it was left with the clerk, was not essential to its filing, and was but evidence of the fact. In King v. Penn. 43 Ohio St., 57,, the court held in fourth syllabi: "Where a paper is in good faith delivered to a proper officer to be filed, and by him received to be kept in its proper place in his office it is

filed. The indorsement upon it by such officer of the fact, and date of filing, is but evidence of such filing.

In Clafflin v. Evans, 55 Ohio St., 183, the court held that a delivery of a deed of assignment to the probate judge was a filing at the time of such delivery, although the indorsement on the deed stated a different time—some two hours later. This decision was based upon sec. 6335 R. S., which requires the assignee "to appear before the probate judge of the county. in which the assignor resided at the time of executing the said assignment," and, "cause the same to be filed in the probate court", and, "the exact time of such delivery shall be indorsed thereon by the probate judge who shall immediately note the filing on the journal of the court." The third syllabi in that case is: "While the presumption is that the officer performed his duty, and the endorsement speaks the truth, that presumption is not conclusive, but the true time of delivery of the assignment may be shown by the parties whose interests are affected."

While the language used in section 6335 R. S. is not identical with that used in sections 1144 and 1145 R. S. defining the duties of a recorder when a deed or mortgage is presented for record, yet the duty imposed upon a recorder by the latter section is substantially the same as are required of a probate judge by the former section. If the indorsement of the probate judge is not conclusive, no reason is apparent why the indorsement of a recorder upon an instrument filed with him for record should be conclusive.

It appears therefore, that it was not error to receive testimony as to the time the mortgages in question were actually left with the recorder for record.

The inquiry then arises, were the mortgages to Kuhn and to Wise left with the recorder of Allen county "for record" prior to the time the deed of assignment was filed in the probate court of said county? Section 4133 provides that "all mortgages executed shall be recorded in the office of the recorder of the county in which the mortgaged premises are situated, and shall take effect from the time the same are delivered to the recorder of the proper county for record; and if two or more mortgages are presented for record on the same day, they shall take effect from the order of presentation for record; the first presented shall be the first recorded, and the first recorded shall have preference."

Section 1139 R. S. requires the office of the recorder to be kept in such room or rooms at the county seat as the commissioner provide. Mortgages must be recorded in the recorder's office under sec. 4133 R. S., and their lien is fixed at the time they are delivered for record. Section 4134 R. S. provides that all conveyances shall be fraudulent as to subsequent purchasers without notice, "until so recorded or filed for record."

No duty is imposed upon the recorder by statute relating to the receiving of deeds and other instruments required to be recorded by him which may not properly be performed in his office; and in no instance does the statute require him to perform such duty at any place outside of his office. His records must be kept in his office, and he must record instruments in his office; may make copies of the records in his office, and must affix his seal of office to each certificate to such copy.

Since the year 1839, the statute gave effect to mortgages from the time of filing for record. But "all other deeds and instruments in writing for the conveyance or incumbrance of any lands—" were required to be filed for record within six months from the date of execution, and were fraudulent only as to subsequent conveyances when not so recorded under the statute of 1832. On May 4th, 1885 the legislature recognized the necessity for shutting off the opportunity which this provision afforded for the practicing of fraud under this provision, and amended sec. 4134 so as to give effect to all such instruments only from the date of filing for record.

It would be inconsistent with the objects for which records are kept in the office of the recorder, to assume that the legislature intended that only a part of the official acts required of the recorder should be performed in his office, and that he might perform a portion of his duties upon the streets, or at any place outside of his office, and make records outside of his office, which should be notice to the public or those making inquiry at the recorder's office, when no such record existed in that office. The indorsement upon a mortgage made at the time it is presented for record, of the time of filing, is the official statement of the fact of filing, and of the time of filing, and is notice to all who may have an interest in, or may desire to acquire an interest in the real estate described in the mortgage, of the existence and contents of such mortgage and of the lien created thereby, and of the precise time when such lien attached. It is not the act that the mortgage was handed to the recorder, and that he indorsed there on the time of filing, which makes such mortgage notice of the lien created by it; but the fact that it was so presented to the recorder for record and by him indorsed and filed in his office, where any interested party may inspect it, which makes it notice. The object of keeping such records is to enable parties to ascertain the exact condition of the title to any real estate, in or to which they have or wish to acquire an interest. If the lien of a mortgage attaches at the time it is handed to the recorder, when not in his office, and when he has noted the day and exact time he received it on the mortgage, and before the same is placed in his office, where it may be inspected. such lien would continue for a day, or a week, or a month, without the same being placed in the recorder's office.

The object of filing a mortgage in the office of the recorder is two-fold: first, to fix the time when the lien attaches; and second, as a public notice of the fact of the lien and the precise time when it attached. Such filing in the office of the recorder is notice by which all persons are bound, for it is then placed in such position that an examination of the records and files in the recorder's office will apprise them of the existence of the lien which the statute declares shall attach when so filed, and which the law declares shall be notice of that fact, although no actual notice exists by reason of a failure to make inquiry at the office of the recorder. To hold otherwise would be to place it without the power of an interested party to know the state of a title by an examination of the records and files in the recorder's office; for if the handing of a mortgage to the recorder when not in his office was a legal filing, if he indorsed the time of filing upon the mortgage, such act of any deputy recorder would be equally binding. If the recorder or such deputy was absent from the office for an entire day, he could legally receive and file any number of mortgages, of which no person examining the records in the recorder's office during that day would or could have any notice; and if such filing created a lien from the time so indorsed upon each mortgage, an avenue of fraud would be opened up which could not have been contemplated by the legislature.

The act of filing being ministerial, no reason is apparent why the same rule should not apply to the ministerial acts of a recorder, as applies to the ministerial acts of a clerk of the courts or probate judge or his deputy clerk. In Haines v. Lindsey supra, the court on page 90, in speaking of the filing of a paper in the clerk's office say: "had the paper been placed in the office, either strung upon a thread, laid in a drawer or pigeon hole, we conceive it would be filed within the terms of a law." The cases of Nimmins v. Westfall, and King v. Penn, before cited, sustain this holding.

In the case of Clafflin v. Evans 55 Ohio St. 183, in the second syllabi, the court uses the term "delivered to the probate judge", as the equivalent of the language, "appear before the probate judge", with the deed of assignment and "cause the same to be filed in the probate court"; as used in the section of the statute then under consideration. Williams, C. J., in delivering the opinion of the court, recognizes the universal rule adopted in the construction of similar statutes, that to file a paper with an officer, is to file it in the office of such officer.

The conclusion seems irresistible that to constitute a delivery of a mortgage to the recorder "for record" within the meaning of sec. 4133, it must be delivered at the office of the recorder and deposited in such office where it can be inspected; and that a delivery to the recorder, when not in his office, is not effectual until the same is placed on file in the office of the recorder. A delivery to the recorder outside of his office not being a valid filing, until actually placed on file in his office, the delivery to another person outside the recorder's office could be of no benefit to the mortgagees.

The mortgages in question not having been filed in the office of the recorder of Allen county, Ohio, before the deed of assignment was filed in the probate court of said county, did not become liens upon the premises therein described, prior to the filing of the deed of assignment. It follows that the mortgagees obtained no preference over the general creditors of the insolvent by reason of the execution of said mortgages and the filing of the same for record.

Ridenour & Halfhill, attorneys for assignee.

Cable & Parmenter, Cunningham & Adgate, attorneys for mortgagees.

Prophet & Eastman, W. B. & W. J. Richie, Meade & Mowen, attorneys for general creditors.