CASE 20—PETITION EQUITY—APRIL 13.

# Linthicum v. Fenley.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. THE ACT OF 1856 IS NEITHER A BANKRUPT LAW NOR AN INSOLVENT ACT; it merely provides that sales, mortgages, or assignments made in contemplation of insolvency, and to prefer one or more creditors over others, shall operate as an assignment and transfer of all the property of the debtor, and shall inure to the benefit of all his creditors, provided that within the time limited they ask that it be so treated, and the court shall take control of the property and distribute its proceeds among his creditors.

2. *The existence of the Federal bankrupt law does not prevent the state courts* from affording this character of relief, any more than it deprives them of the power to enforce the rights of parties under an assignment voluntarily and intentionally made by a debtor for the joint benefit of all his creditors.

3. *The filing of the petition within the time prescribed by the act of 1856 vests in the creditors the right to a distribution under that act,* which can not be impaired by any act of the debtor or the preferred creditor.

4. WHAT VESTS IN THE ASSIGNEE OF A BANKRUPT.—The assignee of a bankrupt is not the assignee of his creditors, nor of all the judgments, executions, liens, and mortgages outstanding against his property.

   *The assignee takes only the bankrupt's interest in property,* and has no control over it other than is given expressly by the bankrupt act, as auxiliary for the preservation of the bankrupt's interest, for the benefit of his general creditors. (Goddard v. Weaver, 6 N. B. Reg. 440.)

5. *Creditors proceeding in the state court under the act of* 1856 can not be forced, either by the debtor or his assignee in bankruptcy, to prosecute their claims in the bankrupt court or forfeit their lien upon or interest in the property against which they were proceeding in the state court. (2d Nat. Bank of Louisville v. Nat. State Bank of N. J., 10 Bush, 367.)

MUIR, BIJUR & DAVIE, ⎫
JOHN M. HARLAN, . . ⎭ . . . . . . For Appellant.

BULLOCK & ANDERSON, . . . . . . . For Appellee,

CITED

Bump on Bankruptcy, 7th ed., 191–2, 128, 129.
Bankrupt Act of Congress of 1867, sec. 35.
3 Bush, 402, Whitaker v. Garnett, &c.
1 Bankr. Reg. 36, *In re* Hugh Campbell.
1 Bankr. Reg. 185, *In re* Bowie.
1 Bankr. Reg. 204, Sedgwick, &c. v. Place, &c.
3 Bankr. Reg. 130, *In re* Clark & Bissinger.
1 Bankr. Reg. 204, Sedgwick v. Minck, &c.
4 Bankr. Reg. 1, Samson v. Burton.
8 Bankr. Reg. 167, *In re* Davis.
9 Blatch. 320, *In re* J. M. Co. of Lake Champlain.
9 Bankr. Reg. 155, Cook v. Waters, &c.
6 Bush, 149, Shackleford, assignee, &c. v. Collier, &c.
·7 Bush, 66, Boone,. assignee v. Hall, &c.
7 Bush, 348, Payne & Bro. v. Able, &c. ·
2 Bush, 70, Lowry v. Fisher.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

·The act of 1856 is not a bankrupt law nor an insolvent act (Ebersole & McCartey v. Adams, &c., 10 Bush, 83). It merely provides that sales, mortgages, or assignments made in contemplation of insolvency, and to prefer one or more creditors to the exclusion of others, shall operate as an assignment and transfer of all the property of the debtor, and shall inure to the benefit·of all his creditors; provided any person interested shall, within six months after the recording of the transfer or the delivery of the property, file his petition in the proper court of equity and ask that it shall be so treated, and that the court shall take control of the property and distribute its proceeds·amongst the beneficiaries in accordance with· their rights.

The existence of the Federal bankrupt law does not prevent the state courts from affording this character of relief any more than it deprives them of the power to enforce the rights of parties under an assignment voluntarily and intentionally made by a debtor for the joint benefit of all his·creditors. If Lewis had expressed in the mortgage to Linthicum his intention

that it should operate as an assignment of all his estate for the benefit of all his creditors, no one would question the right of the state court to enforce the trust. If the mortgage was made in contemplation of insolvency, and to prefer Linthicum to the exclusion in whole or in part of other creditors, the law implies the intention, and the conveyance operates just as if it had been expressed. It may be that the deferred creditors, or any of them, had the right to waive their rights under the state law and treat the mortgage as an act of bankruptcy, and to apply to the district court and have Lewis adjudged a bankrupt and the proceeds of the property distributed under the provisions of the bankrupt act. But all the creditors elected, as they had the right to elect, to proceed in the state court and under the state laws. So soon as the petition was filed the rights of the creditors vested, and such rights could not be impaired by the act of the debtor nor by the act of the preferred creditor.

When Lewis filed his petition in bankruptcy his assignee took just such title to the property owned by the bankrupt at the date of the mortgage to Linthicum as the bankrupt himself held, and that was the equitable right to such portion of the proceeds thereof as should remain after the payment of all the debts due and owing to the legal beneficiaries under the mortgage.

This property was being administered by the state court. It was in law in the possession of that court. Linthicum, the mortgagee, held the legal title to it, and was before the court by service of process.

Lewis was also before said court by actual service of process. His assignee took as a *lis pendens* purchaser, and was bound to obtain such relief as he was entitled to through the state court. Hence he was properly made a party to the suit of Fenley, and having been served with process, he was either acting in contempt of said court when he proceeded to sell the land covered

by the mortgage, or else he must be treated as having sold subject to the rights of the creditors who were prosecuting their claims in said court, and the purchaser could obtain such relief as his purchase entitled him to by making himself a party to Fenley's suit.

"The assignee of a bankrupt is not the assignee of his creditors, nor of all the judgments, executions, liens, and mortgages outstanding against his property. He takes only the bankrupt's interest in property; nor has he right, title, or interest which other parties have therein, nor any control over the same than is given expressly by the bankrupt act, as auxiliary for the preservation of the bankrupt's interest, for the benefit of his general creditors. It would be absurd to contend that the assignee becomes *ipso facto* seized in entirety as trustee of every article of property in which the bankrupt has any interest or share." (Goddard v. Weaver, 6 B. R. Regtr., 440.)

Lewis could not force those of his creditors who were claiming under the mortgage to Linthicum to prosecute their claims in the bankrupt court; nor could his assignee, of his own motion, disregard the rights of those creditors and force them either to come into the bankrupt court or forfeit their lien upon or interest in the property against which they were proceeding in the state court. (Second National Bank of Louisville v. National State Bank of N. J., 10 Bush, 367.)

If one or both of them could have brought about either of these results it would have been upon the idea suggested and pronounced absurd by Mr. Justice Bradley in the case just cited of Goddard v. Weaver, that the assignee was invested with "the king's prerogative, which brooks not a divided domain in property in common with a subject." If the assignee had rights which the creditors proceeding in the state court were disregarding, and which, under the bankrupt act, the bankrupt court could interfere to protect (a matter about which it is unnecessary to express an opinion), he should have applied to said

court instead of assuming the power and authority to ignore the state court, to disregard its process, and to sell and convey property which it had in legal custody.

That Lewis intended, by the execution and delivery of the mortgage, to prefer Linthicum, does not admit of question; that he was insolvent and unable to pay all his debts at that time is pretty clearly proved, and that he knew that the effect of the mortgage would be to exclude in whole or in part some of his creditors is satisfactorily established by the weight of the testimony.

We conclude, from the proof, that the mortgage was made in contemplation of insolvency and to prefer Linthicum to the exclusion in whole or in part of other of the mortgagee's creditors.

Judgment affirmed.