CASE 39—ACTION BY L. R. PORTER'S ASSIGNEE AGAINST LELIA DOWNER
AND OTHERS TO SUBJECT CERTAIN REAL ESTATE TO THE PAYMENT
OF CREDITORS.—OCT. 8.

# Downer, &c., v. Porter, &c.

APPEAL FROM WARREN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL.    AFFIRMED.

ASSIGNMENT FOR BENEFIT OF CREDITORS—ACTION BY ASSIGNEE—NA-
TIONAL BANKRUPTCY ACT—LIMITATION OF ACTIONS—ATTORNEY
AND CLIENT—NOTICE TO ATTORNEY—EFFECT ON CLIENT.

Held:    1. Kentucky Statutes, 1899, section 84, provides that if an
assignor for the benefit of creditors, before making the deed,
shall have made a preferential or fraudulent transfer of any of
his property, it shall vest in the assignee, who shall have the
remedies of a creditor.    Act 1856 (Kentucky Statutes, 1899,
section 1910) enacts that every sale made by a debtor in con-
templation of insolvency, and with a design to prefer one credi-
tor, shall operate as an assignment for the benefit of his credi-
tors; and by section 1911 such transfers are subject to the
control of equity on petition of any one interested.    The national
bankruptcy act makes it an act of bankruptcy for a debtor to
make an assignment for the benefit of his creditors, or to prefer
one creditor over another.    HELD, that the fact that when an
insolvent made a conveyance of real estate and when he sub-
sequently made an assignment for the benefit of creditors the
national bankruptcy act was in force did not preclude the as-
signee from suing to bring the property conveyed into the trust
fund, the act of 1856 not being an insolvency act which could
be superseded by the bankruptcy act, and the transaction being
within the jurisdiction of the State courts under its statutes
until attacked in the Federal courts as an act of bankruptcy.
2. Kentucky Statutes, 1899, section 1911, makes a transfer by a debtor
in contemplation of insolvency subject to the control of equity
on    a    petition    of    any    one    interested    who    files
a petition within six months after the delivery of the property.
HELD, that "delivery of the property" means a visible change of
possession, and, where a house was conveyed, the mere fact

that the tenant therein attorned to the grantee, and thereafter paid her rent, did not constitute a delivery sufficient to set the statute in motion.

3. Where the attorneys for an insolvent learned from him that he had conveyed certain land, and subsequently they were employed by the insolvent's assignee for the benefit of creditors, their knowledge of the deed was not chargeable to the assignee.

W. B. GAINES, ATTORNEY FOR APPELLANT.

### POINTS AND CITATIONS.

1. Appellee took no title to the property in controversy by the deed of assignment from L. R. Porter, because:

(a) The Kentucky assignment act is superseded and suspended by the bankrupt act of 1898, Sec. 75, Ky. Stats.; Bankrupt Act, sec. 3, subsecs. 4 and 1; Parmenter Mfg. Co. v. Hamilton, 172 Mass., 178; Harbaugh v. Costello, 56 N. E., 363, Ill.; Ketcham v. McNamarra, 50 L. R. A., 641 (Conn.).

The act of 1856 is certainly superseded and suspended. Ketcham v. McNamarra, supra; Bankrupt Act, sec. 60.

(b) If the deed had any force it was a common law deed of assignment and the assignee took only such property as the assignor had at the date of the assignment. Boese v. King, 108 U. S., 507.

2. The law of 8167 is radically different from the law of 1898 when Ebersole & McCarty v. Adams, 10 Bush, 83, and Linthicum v. Fenley were decided in this (a) every deed of assignment is a fraud upon the Bankrupt Act (sec. 3, subsec. 4) and proceedings to wind up insolvent are forbidden to the State courts by the concluding clause of the act of 1898.

3. The conveyance not being acknowledged or a recordable instrument possession by appellant for more than six months before the institution of the suit barred the action. Ky. Stats., sec. 1911; Temple Barker & Co. v. Poyntz, 2 Duv., 276; Cogar v. Stewart, 78 Ky., 59.

4. Appellee, as a matter of fact, knew of the transfer for more than six months before the institution of the suit. On March 4, 1901, appellant's attorneys knew of the transfer and their knowledge is the knowledge of the appellant. Harrington v. U. S., 11 Wall., 356; May v. LeClaire, 11 Wal., 217.

SIMS & GRIDER, ATTORNEYS FOR APPELLEES.

### POINTS AND AUTHORITIES.

1. National bankrupt law does not suspend State assignment law, and where an assignment is made under the State law, all

steps taken thereunder are valid and binding, in case there is no petition filed in bankrupty. Boese v. King, 108 U. S., 379; Simonson v. Sinscheiner, 95 Fed. Rep., 948.

2. Knowledge of attorney as to any fact before relation of attorney and client existed is not deemed the knowledge of the client. Am. & Eng. Ency. of Law, vol. 3, p. 322 (2d ed.).

3. Where possession for more than six months is relied on to defeat an action to set aside a fraudulent conveyance that possession must be open and ostensible and such as to put creditors upon inquiry as to the ownership of the property. Brown v. Early, 2 Duv., 371.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

L. R. Porter, who was at the time insolvent, conveyed on February 10, 1901, to appellant Downer, a house and lot in consideration of a pre-existing debt. On March 4, 1901, Porter assigned to appellee for the benefit of his creditors, and he subsequently brought this suit on October 22, 1901, to have the property brought into the trust fund for the equal payment of all the creditors of Porter under section 84, Kentucky Statutes, 1899: "If the assignor before making the deed shall have made a preferential or fraudulent transfer, conveyance or gift of any of his property or a fraudulent purchase of any property in the name of another, the property so fraudulently transferred, conveyed or purchased shall vest in the assignee, and it shall be his duty to institute such proceedings as may be necessary to recover the property so conveyed or disposed of, and to this end he shall have the remedies which the creditors or any of them might exercise. If the assignee upon demand shall refuse to institute such proceedings, any creditor may do so, and property so recovered shall become a part of the estate, and be distributed as other assets." Section 1910, Kentucky Statutes, 1899, commonly known as the "Act of 1856," further provides that every sale made by a debtor in contemplation of insolvency, and with the design to prefer one or

more creditors to others, shall operate as an assignment of
all of the property of the debtor, and shall inure to the ben-
efit of 'all his creditors.  By section 1911 such transfers
are subject to the control of courts of equity upon the peti-
tion of any person interested, filed within six months after
the transfer is lodged for record or the delivery of the prop-
erty.  When the transaction in question took place, the
United States bankruptcy act was in effect.  By that stat-
ute it is made an act of bankruptcy that the debtor has
made an assignment for the benefit of his creditors, or has
preferred one creditor to others.  It is insisted for appel-
lant that, the United States bankruptcy statute being in
effect when the transaction took place, and making it an
act of bankruptcy, the State statute was superseded by the
act of Congress, and no action can now be maintained under
the State statute.  In support of this position we are re-
ferred to a number of decisions in other States to the effect
that all State insolvency laws are suspended when the
paramount jurisdiction of Congress has once been exercised.
See 5 Cyc., 240.  But our act of 1856 is not an insolvency
law within the meaning of this rule.  The precise question
was presented in Ebersole v. Adams, 73 Ky., 83, where the
court, speaking of the act of 1856, said: "This act is not
a bankrupt law, nor an insolvent act.  It has none of the
characteristics of either, except that it provides for the ap-
propriation of the property of the debtor to the payment
pro tanto of all his creditors.  An assignment or transfer
made in contemplation of insolvency and to prefer creditors
is an act of bankruptcy under the act of Congress, but this
fact does not deprive creditors of the right to apply to the
State courts for relief in case they choose to do so.  Not-
withstanding the Federal bankrupt act, the State courts
have full and complete power to relieve against all frauds,

actual or constructive, except in cases in which a court of bankruptcy has first taken jurisdiction, or where the relief asked in the State courts is subversive of the rights of parties to a pending proceeding in bankruptcy subsequently instituted." This was reiterated in Linthicum v. Fenley, 74 Ky., 131. In Simonson v. Sinsheimer, 95 Fed., 948, 37 C. C. A., 337, it was held by the United States Circuit Court of Appeals that an assignment for the benefit of creditors is valid under the present bankruptcy statute if not impeached by a petition in bankruptcy filed within four months after its execution, and in that case the validity of the proceedings of the State court under the deed of assignment which had not been impeached by a petition in bankruptcy was recognized. This was the rule under the former bankrupt act, and there is nothing in the new act to show that Congress intended to change it. Mayer v. Hellman, 91 U. S., 496, 23 L. Ed., 337. The provision of the present statute that "proceedings commenced under State insolvency laws before the passage of this act shall not be affected by it" has no application, for the reason that it was only intended to take such pending proceedings out of the operation of that act; and, besides, the act of 1856, as shown, is not a State insolvency law. Any fraudulent conveyance of property is an act of bankruptcy under the Federal statute, no less than the making of a deed of assignment for the benefit of creditors, or the preferring of one creditor to others. And if the act of Congress making these things acts of bankruptcy supersedes the State laws giving remedies therefor, then it would follow that since the passage of the bankruptcy act a creditor can not take out an execution in the State courts on a judgment, and subject property thus fraudulently conveyed, or subject it in an attachment proceeding or upon a return of no

property, although no petition in bankruptcy had been filed in the Federal court impeaching the transactions as acts of bankruptcy. This was not the meaning of the act of Congress, and, the matters complained of having never been impeached as acts of bankruptcy, the State courts have jurisdiction to take charge of the property and distribute the proceeds ratably among all the creditors. It is fairly set-tled by the authorities that the State courts may do this in the case of a voluntary assignment for the benefit of creditors which has not been attacked as an act of bank-ruptcy. The statute quoted above vests in the assignee not only the property conveyed to him by the assignor, but also all the property conveyed away by the assignor by a prefer-ential or fraudulent transfer. The circuit court, in adjudg-ing the property in contest to the assignee, only carried out the statute. If the State courts may enforce voluntary assignments for the benefit of creditors, they may certainly enforce a statute like this, merely regulating what property shall vest in the assignee under the deed of assignment. See Louisville Trust Co. v. Comingor, 184 U. S., 18, 22 Sup. Ct., 293, 46 L. Ed., 413; Beese v. King, 108 U. S., 379, 2 Sup. Ct., 765, 27 L. Ed., 760; *In re* Scholtz (D. C.), 106 Fed., 834; *In re* Worcester County, 102 Fed., 808, 42 C. C. A., 637; *In re* Romanow (D. C.), 92 Fed., 510; Patty-Joiner, etc., Co. v. Cummins, 93 Tex., 598, 57 S. W., 566; Armour Pack-ing Co. v. Brown, 76 Minn., 465, 79 N. W., 522; Binder v. McDonald, 106 Wis., 332, 82 N. W., 156.

At the time the conveyance was made the house was rent-ed out, and the tenant attorned to appellant, and thereafter paid her the rent; but there was no visible change of pos-session, and the deed was not recorded. The delivery of the property, within the meaning of the statute defining the time within which the action must be brought, means

a visible change of possession, and the mere fact that the tenant paid rent to the vendee is not sufficient to set the statute in motion.

Sims & Grider were Porter's attorneys, and advised him not to make the conveyance. He, however, made it, contrary to their advice. After the assignment was made, they were employed by the assignee, but did not inform him of the deed to appellant, as they had acquired knowledge of this deed from Porter while he was their client. It is urged that the assignee must be charged with the knowledge of his attorneys as to the existence of the deed. This would be true if Sims & Grider had learned of the deed as his attorneys, but he is not chargeable with knowledge thereof which they acquired as the attorneys of Porter, and before their employment by him. An attorney is not required to disclose to one client the secrets of another intrusted to him professionally by the other client in the transaction of his business. Were the rule otherwise, a man could not safely advise with his attorneys, because he could not foresee by whom they might be thereafter employed, or what use might be made of the facts communicated to them. On the questions of fact involved we can not, under the evidence, disturb the chancellor's conclusion.

Judgment affirmed.