## In re FARRELL.

(Circuit Court of Appeals, Sixth Circuit. January 24, 1910.)

### No. 1,982.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 184*)—NATURE OF ASSIGNMENT —CAPACITY OF ASSIGNEE.

Though the legal title to property covered by a deed of assignment passes to the assignee, he is regarded as the assignor's agent to distribute the proceeds of the property among the creditors.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 555–571; Dec. Dig. § 184.*]

2. BANKRUPTCY (§ 440*)—APPEAL—"CONTROVERSY ARISING IN BANKRUPTCY PROCEEDINGS."

Nothing can be regarded as a "controversy arising in bankruptcy proceedings," within Bankr. Act July 1, 1898, c. 541, § 24a, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3431), providing for appeals in such proceedings, where the subject-matter and object of the proceedings are within the power of the trial court to make a summary order, especially where a plenary action is not sought; a complaint in regard to a summary order to turn over assets not being specially made appealable under such subdivision.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 440.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

3. BANKRUPTCY (§ 440*)—REVIEW—APPEAL—PETITION TO REVISE.

In determining the remedy as between review or appeal in bankruptcy proceedings, the court is governed by the object and character of the proceeding.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. § 440.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. BANKRUPTCY (§ 440*)—SURRENDER OF ASSETS—SUMMARY ORDER.**

A decision denying a summary order, in bankruptcy, to compel the bankrupt's assignee for the benefit of creditors to turn over to the trustee assets alleged to belong to the bankrupt, is reviewable on a petition to revise in matter of law, authorized by Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 440.*]

**5. BANKRUPTCY (§ 9*)—STATE INSOLVENCY LAWS—SUSPENSION.**

Rev. St. Ohio § 6343, as amended by Act April 26, 1898 (93 Ohio Laws, p. 290), and Act May 12, 1902 (95 Ohio Laws, p. 608), regulating the administration of property assigned for the benefit of creditors, is not an insolvent law, and was not, therefore, suspended by the federal bankruptcy act.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 7–9; Dec. Dig. § 9.*]

**6. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 22*)—NATURE AND EFFECT.**

A voluntary assignment for the benefit of creditors, consisting of a transfer of property of a debtor to an assignee in trust to distribute among the creditors, rests primarily, not on the state statute, but on the debtor's common-law power to dispose of his property.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 36–38; Dec. Dig. § 22.*]

**7. BANKRUPTCY (§ 161*)—ACTS OF BANKRUPT—ASSIGNMENT FOR THE BENEFIT OF CREDITORS—TIME.**

Where no steps were taken to have an assignor for the benefit of creditors declared a bankrupt until more than six months after his assignment had been filed in the probate court, and it appeared that the assignment was valid both at common law and under the state statutes, the bankrupt's trustee was not entitled to a summary order requiring the assignee to surrender the net assets belonging to the bankrupt in his hands, and this though the appraisement filed by the assignee in probate court indicated that the assignor was solvent, since the making of the assignment authorized the creditors to proceed in bankruptcy within four months, regardless of the debtor's solvency.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 161.*]

Petition to Review an Order of the District Court of the United States for the Northern District of Ohio.

In the matter of the bankruptcy of George B. Harvey. On petition to revise in matter of law an order refusing to grant a summary order requiring one Mason to turn over alleged assets of the bankrupt to George T. Farrell, trustee. Affirmed.

The petitioner asks this court to revise in matter of law the action of the court below in refusing to grant a summary order to turn over alleged assets of the bankrupt. On August 3, 1908, Harvey filed a voluntary petition in bankruptcy and was on that day adjudged a bankrupt. On the 18th of that month petitioner was appointed and qualified as trustee in bankruptcy for the benefit of the creditors of Harvey. More than six months prior thereto, namely, January 25th of that year, Harvey filed in the probate court of Columbiana county, Ohio, his deed of assignment for the benefit of his creditors, transferring all his property to one Mason. Mason accepted the appointment, gave bond, and otherwise qualified as assignee, and had, under orders made by the probate court prior to the commencement of his assignor's proceedings in bankruptcy, distributed a substantial portion of the assets among the creditors. The assignee received further moneys, and under like orders made distribution among the creditors after appointment of the trustee in bankruptcy.

On March 1, 1909, while the assignee was engaged in the administration of his assignor's estate, the trustee of the bankrupt filed a petition in the court

below in which he prayed for an order to restrain the assignee from disposing of any of the assigned property, to stay further proceedings in the probate court, and to require the assignee to show cause why he should not file a report in the court below of his proceedings in the probate court, and why he should not turn over to the trustee for the benefit of the bankrupt all the property in possession of the assignee and not distributed at the time Harvey was adjudged bankrupt. On March 12th the assignee filed an answer, in which he summarized the proceedings taken in the probate court, and claimed that all his payments of costs, expenses, dividends, etc., were made before he had any knowledge that the petition in this proceeding was filed or was to be filed, and in reliance upon his right to wind up his trust under the deed of assignment, claimed title to the property in his possession and the right to hold it as assignee, and denied the right and jurisdiction of the court below to take the property from him, and protested against the making of any order. The trustee in his reply admitted that the assignee was entitled to certain commissions, and was indebted for services of his attorneys and for other expenses of administration, and waived all claim to the assets remaining in the hands of the assignee, except such as the probate court or any higher court of Ohio "may find upon final adjudication to be due from said assignee to this trustee."

The matter was referred to the referee in bankruptcy, who denied the petition. On petition for review in the district court, the order of the referee was affirmed, and the petition dismissed.

C. F. Smith, for petitioner.

N. B. Billingsley, for respondent.

Before SEVERENS and WARRINGTON, Circuit Judges, and SANFORD, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). The question first requiring attention is one of procedure. It is claimed for the assignee that the case should have been brought to this court by appeal, and not by petition for revision. As shown in the statement, the effort of the trustee in bankruptcy was to obtain a summary order to compel the assignee to turn over the assets received by him from his assignor, less dividends theretofore paid, and less such commissions, expenses, and attorney's fees as the Ohio courts might fix, or, stated in another way, to pay over the net assets remaining applicable to payment of creditors.

In Seinsheimer v. Simonson, 107 Fed. 898, 47 C. C. A. 51, this court entertained a case on petition to review an order made by the District Court affirming an order of the referee in bankruptcy, which required an assignee, who, at the time his assignor was adjudged bankrupt, was administering the estate under a general assignment made in Kentucky, to pay over certain moneys which he had applied to payment of his commissions and his counsel. The moneys were claimed to be trust assets for which he was chargeable. The order of this court reversing the court below was affirmed by the Supreme Court on certiorari in Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413.

In the case of In re Abraham (Bernheimer v. Bryan, Marshal) 93 Fed. 767, 783, 35 C. C. A. 592, an appeal was taken in the District Court to the Circuit Court of Appeals from a summary order made by the District Court as a court of bankruptcy, requiring the marshal to seize goods purchased of an assignee under a general assignment, and on motion made to dismiss the appeal on the ground, among

others, that the order made was not appealable, the appeal was treated as a petition for revision. Although the case was reversed by the Supreme Court in Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, yet it was not reversed for that reason. In Holden v. Stratton, 191 U. S. 115, 119, 24 Sup. Ct. 45, 48 L. Ed. 116, it is pointed out by the Chief Justice that in Bryan v. Bernheimer, supra—

"the Circuit Court of Appeals treated the case as if before it on a petition for revision, though it had been carried there on an appeal, and we considered the decree as rendered in the exercise of a supervisory power."

It should be stated that in Mueller v. Nugent, 105 Fed. 581, 44 C. C. A. 620, this court again entertained a case on petition for review of a summary order made by the District Court to pay over certain moneys of the bankrupt, which were in possession of his son, but held that the person in possession could not be dispossessed, except by plenary suit. Since the Supreme Court, in reversing the decision (184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405), held that the order could be enforced by commitment, it would seem that the petition to review in this court was well within the ruling.

And in York Manufacturing Co. v. Cassell, 201 U. S. 344, 353, 26 Sup. Ct. 481, 484, 50 L. Ed. 782, in explaining the decision in Mueller v. Nugent, the court said:

"The dispute in the Mueller Case was whether the court of bankruptcy had power to compel, in a summary way, the surrender of money or other property of the bankrupt in the possession of the bankrupt, or of some one for him, without resorting to a suit for that purpose. This court held, as stated by the Chief Justice in delivering the opinion: 'The bankruptcy court would be helpless indeed if the bare refusal to turn over could conclusively operate to drive the trustee to an action to recover as for an indebtedness, or a conversion, or to proceedings in chancery, at the risk of the accompaniments of delay, complication, and expense, intended to be avoided by the simpler methods of the bankrupt law.' It was held that the trustee was not thus bound, but had the right, under the facts in that case, to proceed under the bankrupt law itself, and take the property out of the hands of the bankrupt, or any one holding it for him."

The power thus mentioned is the same as that invoked in the present case; for, although the legal title to the property covered by the deed of assignment passes to the assignee, he is regarded as the agent of the assignor to distribute the proceeds of the property among his creditors. Bryan v. Bernheimer, 181 U. S. 188, 192–193, 21 Sup. Ct. 557, 45 L. Ed. 814; Crist v. Langhorst, 5 Ohio Dec. 352 (per Force, J., speaking for the Hamilton Co., O., Dist. Court); In re Stokes (D. C.) 106 Fed. 312.

It is true that no decision has been cited, and that we do not discover any, in which the present question was made a distinct issue or the subject of an express decision. The nearest approach to this perhaps occurred in the Fifth Circuit in Re Abraham, supra, and in the approval given to the case in Holden v. Stratton, as before shown. But we think it may fairly be deduced from the decisions we have commented on that the practice of bringing up summary orders for revision upon petition to review is warranted by the bankruptcy act. Indeed, this would seem to follow alone from what is said in Mueller v. Nugent and York Manufacturing Co. v. Cassell, as before pointed

out; for the very holding that a summary order may be employed to compel payment of assets of a bankrupt which are held by him personally, or through an agency created by him, manifestly dispenses with the necessity to resort to plenary action.

Thus the remedy for coming into this court upon complaint made against allowance or refusal of a summary order is, we think, reducible to petition to revise in matter of law, according to subdivision "b," § 24, of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 343]). Nothing, as it seems to us, can be regarded as a controversy "arising in bankruptcy proceedings" within the purview of subdivision "a," § 24, where the subject-matter and object of the proceedings are within the power to make a summary order. Certainly this is true where plenary action is not sought. It is hardly necessary to say that complaint in regard to a summary order to turn over assets is not specially made appealable under subdivision "a" of section 25. In determining the question of remedy, then, as between review or appeal under the bankruptcy act, we are not to be governed by our ideas of whether the power invoked can be rightly exercised or not in the given instance, but by the object and character of the proceeding. Coder v. Arts, 213 U. S. 223, 233, 29 Sup. Ct. 436, 53 L. Ed. 772. We therefore hold that the case is properly before us.

The contention made on behalf of the trustee of the bankrupt is two-fold: That the assignment laws of Ohio are insolvency or bankruptcy laws, and so are suspended by the bankruptcy act; and that the assets in the hands of the assignee are held by him as agent of his assignor, the present bankrupt, and are consequently part of the estate to be administered in bankruptcy. These claims are resisted on the grounds that the applicable Ohio statutes are not insolvency or bankruptcy laws, and that the assignment was made more than four months prior to the filing of the petition in bankruptcy. It is urged that these grounds of defense are sustained by Mayer v. Hellman, 91 U. S. 496, 23 L. Ed. 377, and Boese v. King, 108 U. S. 379, 2 Sup. Ct. 765, 27 L. Ed. 760, both relating to the bankruptcy act of 1867 (14 Stat. 517, c. 176), and the former also to the statutes of Ohio, and the latter to the statutes of New Jersey, concerning assignments for the benefit of creditors. Those decisions, especially the first one, must rule the case at bar, unless there be some later change in legislation rendering them inapplicable.

Section 6343 of the Revised Statutes of Ohio was amended twice (in 1898 [93 Ohio Laws, p. 290] and in 1902 [95 Ohio Laws, p. 608]) between the times when the decisions just mentioned were rendered, and the dates of the general assignment and the filing of the petition in bankruptcy in question. The difference between the old section and the new one is that the former declared that assignments made to a trustee in contemplation of insolvency and with intent to prefer or delay creditors should inure to the equal benefit of all creditors and that the trusts arising under them should be administered as other assignments, while the latter declares all instruments, including assignments that are made in trust or otherwise by a debtor, and all judgments suffered by him to be taken against himself in contempla-

tion of insolvency and with the design to prefer creditors, or with intent to hinder, delay, or defraud creditors, shall be declared void, and shall inure to the equal benefit of all the creditors.

It is said of the change thus made, first, that involuntary assignments are provided for. But this was so before. The existing amendment only increases the instruments that shall inure to the benefit of creditors. It is claimed next, and truly, that under the old section a preference could be made in favor of a debtor, as held in Cross v. Carstens, 49 Ohio St. 548, 567, 31 N. E. 506, and that this cannot be done under the new section. The theory of that decision was that the old section did not in terms apply to a mortgage made to prefer a particular creditor as mortgagee, and not made to him as trustee for the benefit of others. But the transaction under review was in no sense like the one upheld in Cross v. Carstens.

It cannot escape attention, moreover, that both of these changes plainly tended to remove, rather than to enhance, conflict between section 6343 and the bankruptcy act; for they are both in harmony with the policy of that act in compelling equality of distribution of the property of debtors among their creditors. We therefore see no reason why the language employed in Mayer v. Hellman to meet the claim there made, as here, that the bankruptcy act suspended the "operation of the act of Ohio regulating the mode of administering assignments," is not quite as applicable now as it was then. It was said (page 502 of 91 U. S. [23 L. Ed. 377]):

"That the statute of Ohio is not an insolvent law in any proper sense of the term. It does not compel, or in terms even authorize, assignments. It assumes that such instruments were conveyances previously known, and only prescribes a mode by which the trust created shall be enforced. * * * There is nothing in the act resembling an insolvent law. It does not discharge the insolvent from arrest or imprisonment. It leaves his after-acquired property liable to his creditors precisely as though no assignment had been made. The provisions for enforcing the trust are substantially such as a court of chancery would apply in the absence of any statutory provision. The assignment in this case must, therefore, be regarded as though the statute of Ohio, to which reference is made, had no existence. There is an insolvent law in that state; but the assignment in question was not made in pursuance of any of its provisions."

One important feature of that decision is its recognition of the separable quality of the Ohio statutes there referred to. Another is that, while a portion of the Ohio act is an insolvency law, yet that a voluntary assignment is not made in pursuance of any of its provisions. Indeed, a voluntary general assignment for the benefit of creditors is not made in Ohio in virtue of any statute at all. Section 6335 provides that:

"When any person * * * shall make an assignment to a trustee of any property * * * in trust for the benefit of creditors, it shall be the duty of said assignee, within ten days after the delivery of the assignment to him, and before disposing of any property so assigned, to appear before the probate judge of the county in which the assignor resided at the time of executing the said assignment, produce the original assignment, or a copy thereof, cause the same to be filed in the probate court, and enter into a bond. * * * *"

This, as pointed out in Mayer v. Hellman, presupposes the existence of a deed of assignment and creation of a trust, and simply undertakes

to regulate the trust later for the equal protection of the creditors. The right so to dispose of the property in trust is not dependent upon the statute. It is an ordinary attribute of ownership. In the case of In re Gutwillig (D. C.) 90 Fed. 475, 476, it was said by Judge Brown:

"Voluntary assignments for the benefit of creditors, * * * as practiced in this and other states, do not originate in the state statutes, but in the common-law power of the debtor to dispose of his property."

That opinion received deserved special approval through Mr. Justice White in West Company v. Lea, 174 U. S. 590, 596, 19 Sup. Ct. 836, 43 L. Ed. 1098. As said by Chief Justice Marshall in Brashear v. West, 7 Pet. 608, 613, 8 L. Ed. 801:

"The right to make it (a general assignment) results from that absolute ownership which every man claims over that which is his own."

So Chief Justice Graves said of such an assignment in Cook v. Rogers, 31 Mich. 391, 397:

"What is this basis for conveying in trust for creditors, to which allusion is made? It is the right which every man having the general capacity to contract has to make honest and unforbidden contracts, and the right of disposition which is incident to ownership."

Justice Field stated the same thing in Mayer v. Hellman, 91 U. S. 500 [23 L. Ed. 377]:

"The validity of the claim of the assignee in bankruptcy depends, as a matter of course, upon the legality of the assignment made under the laws of Ohio. Independently of the bankrupt act, there could be no serious question raised as to its legality. The power which every one possesses over his own property would justify any such disposition as did not interfere with the existing rights of others; and an equal distribution by a debtor of his property among his creditors, when unable to meet the demands of all in full, would be deemed, not only a legal proceeding, but one entitled to commendation."

It follows that the present deed of assignment is valid, both as respects the common law and the statutes of Ohio. See, also, Pogue v. Rowe, 236 Ill. 157, 86 N. E. 207. We do not overlook the fact that Congress has expressly made a voluntary assignment an act of bankruptcy. But this result was reached under our former bankruptcy laws, although an assignment was not made an act of bankruptcy in express terms. This is true also of the English acts. In re Gutwillig, supra, 90 Fed. 478; West Company v. Lea, supra, 174 U. S. 596, 19 Sup. Ct. 836, 43 L. Ed. 1098. But the provision of the present act limits, as also the other acts alluded to limited, the right to annul voluntary general assignments to specified periods of time. That time is fixed by the present act at four months from the date of filing the deed in the probate court.

It is admitted that all persons concerned in the present estate, including the assignor himself, suffered the limitation of four months to expire before commencing any proceedings in bankruptcy. The first thing done under the bankruptcy act, by any one interested in this matter, was the commencement of a voluntary proceeding by the assignor himself. But that was more than six months after making his assignment; and the first movement that can be said to have been made on behalf of the creditors under the bankruptcy act was the commence-

ment of the present proceeding after the lapse of more than six months succeeding the appointment of the trustee. It is therefore impossible to escape either the decision announced by Mr. Justice Harlan in Boese v. King, or that announced in Mayer v. Hellman. Justice Field said in the latter (91 U. S. 501 [23 L. Ed. 377]):

"Those periods constitute the limitation within which the transactions will be examined and annulled, if conflicting with the provisions of the bankrupt act. Transactions anterior to these periods are presumed to have been acquiesced in by the creditors. There is sound policy in prescribing a limitation of this kind. * * * Unless, therefore, a transaction is void against creditors independently of the provisions of the bankrupt act, its validity is not open to contestation by the assignee where it took place at the period prescribed by the statute anterior to the proceedings in bankruptcy. The assignment in this case was not a proceeding, as already said, in hostility to the creditors, but for their benefit. It was not, therefore, void as against them, or even voidable. Executed six months before the petition in bankruptcy was filed, it is, to the assignee in bankruptcy, a closed proceeding."

See the following decisions relating to assignments made since the passage of the present bankruptcy act: Randolph v. Scruggs, 190 U. S. 533, 537, 23 Sup. Ct. 710, 47 L. Ed. 1165; Frazier v. Southern Loan & Trust Co., 99 Fed. (C. C. A., 4th Circuit) 707, 714, 40 C. C. A. 76, approved in Pickens v. Roy, 187 U. S. 177, 180, 23 Sup. Ct. 78, 47 L. Ed. 128; Downer v. Porter, 116 Ky. 422, 76 S. W. 135; Grunsfeld Bros. v. Brownell, 12 N. M. 192, 76 Pac. 310; Patty-Joiner & Eubank Co. v. Cummins, 93 Tex. 598, 57 S. W. 566; Loveland on Bankr. (3d Ed.) p. 30.

Nor can the rule thus established be escaped in the present case by the suggestion that, according to the appraisement filed in the probate court, the debtor appeared to be solvent, for the reason, if for no other, that it is settled by West Company v. Lea, supra, that the making of a general assignment entitles creditors (within the four months' period) to maintain a proceeding of involuntary bankruptcy against the assignor, without reference to his solvency.

The action of the court below is affirmed, with costs.